IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Calvin Jerome Byrd,   #257319,<br><br>                    Petitioner,<br><br>vs.<br><br>Director Jon Ozmint, and Robert M.<br>Stevenson, III, Warden of Broad River<br>Correctional Institution,<br><br>                    Respondents. | Civil Action No. 3:07-2951-PMD-JRM<br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Calvin Jerome Byrd ("Byrd"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty-five years imprisonment for distribution of crack cocaine and fifteen years (concurrent) for distribution within close proximity to a school. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on January 3, 2008. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on February 4, 2008, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on February 21, 2008.

**Background and Procedural History**

On March 6, 1998, Byrd sold a small amount of crack cocaine to a confidential informant ("CI") working with the Lexington Police Department. The transaction was audio and video taped. Byrd was arrested later. He was represented at trial by David C. Shea, Esq. and Sally J. Henry, Esq.

The CI and surveillance officers identified Byrd as the person on the tapes who had distributed the drugs. Byrd presented no evidence in his defense. The jury returned verdicts of guilty on March 17, 1999. A direct appeal was filed through the South Carolina Office of Appellate Defense raising the following issues:

1. Whether the identification procedure here was unnecessarily suggestive and conducive to irreparable mistaken identification, violating due process of law?

2. Whether the court erred when it accepted the solicitor's explanation for striking juror number 138, Wigfall, because the record showed it was pretextual and therefore was in violation of *Baston v. Kentucky*?

The conviction was affirmed by the South Carolina Court of Appeals. State v. Byrd, Mem. Op. No. 2000-UP-570 (S.C.Ct.App. filed September 20, 2000) (App. 270). Byrd did not seek review by the South Carolina Supreme Court. The Remittitur was returned on October 6, 2000. (Res. Mem., Ex. 2).

Byrd filed an application for post-conviction relief ("PCR") on November 1, 2000. (App. 272), Byrd v. State, 2000-CP-32-3209 ("Byrd I"). An evidentiary hearing was held on February 14, 2002. Byrd appeared and testified. He was represented by Lawrence Simmons, Esq. The PCR court issued an order of dismissal on May 7, 2002. A Johnson[1] petition for writ of certiorari was filed by the South Carolina Office of Appellate Defense raising the following issue:

Whether defense counsel was ineffective in failing to request a jury charge on lesser included offense of simple possession of crack cocaine?

(Res. Mem., Ex. 3). The petition for writ of certiorari was denied by the South Carolina Supreme Court on April 24, 2003. (Res. Mem., Ex. 5). The Remittitur was returned on May 13, 2003. (Res. Mem., Ex. 6).

---

[1] Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

Byrd returned to state court on September 17, 2003 when he filed his second PCR, <u>Byrd v. State</u>, 2003-CP-32-3506 ("<u>Byrd II</u>"). An evidentiary hearing was held on October 18, 2005. Charlie J. Johnson, Jr., Esq. represented Byrd. (Res. Mem., Ex. 9). Byrd asserted, *inter alia*, that defects in the indictment deprived the trial court of jurisdiction. The court held in <u>Byrd II</u> that the application was successive and untimely and that there was no defect in the indictment. (Res. Mem., Ex. 10). A <u>Johnson</u> petition for writ of certiorari was filed through the South Carolina Office of Appellate Defense. (Res. Mem., Ex. 11) raising the following issue:

> Did the PCR court err in refusing to find counsel ineffective for failing to move to quash the defective indictments?

Byrd raised the following issue in a pro se petition (Res. Mem., Ex. 13):

> Should Gentry [<u>State v. Gentry</u>, 610 S.E.2d. 494 (S.C. 2005)] be applied to deny the petitioner relief, when the petitioner would have been entitled to relief at the time he filed his current post-conviction relief action?

The South Carolina Supreme Court denied the petition for writ of certiorari on July 3, 2007 (Res. Mem., Ex. 14). The Remittitur was returned on July 19, 2007. (Res. Mem., Ex. 15).

## **Grounds for Relief**

In his present petition, Byrd asserts that he is entitled to a writ of habeas corpus on the following grounds:

> Ground one: The identification procedure was unnecessarily suggestive and conducive to irreparable mistaken identification, violating due process of law.
>
> Supporting facts: The trial court allowed the state's key witness, William Cromer, to make an in-court identification of petitioner. Prior to the in-court ID, law enforcement allowed Cromer to view a video tape that allegedly showed the petitioner involved in a drug transaction. In addition, investigating officers told Cromer that petitioner was the person on the video tape.

Ground two: The court erred when it accepted the solicitor's explanation for striking juror 138, Wigfall, because the strike was pretextual and violated <u>Batson v. Kentucky</u>.

Supporting facts: The solicitor stated he struck juror Karen Wigfall because he learned during voir dire that her son had been arrested on more than one occasion on drug charges. The record reflects that such information never came out during voir dire. In spite of this, the court still accepted the solicitor's explanation.

Ground three: Defense counsel was ineffective in failing to request a jury charge on the lesser included offense of simple possession of crack cocaine.

Supporting facts: At the first PCR hearing Petitioner called into question the amount of crack cocaine he allegedly had, Defense counsel admitted he did not request a jury instruction in the lesser included offense of simple possession. There is a substantial difference in the amount of time each offense carries. There as (sic) no strategic reason not to request the instruction.

Ground four: Trial counsel was ineffective for failing to move to quash defective indictments.

Supporting facts: The indictments in Petitioner's case reflected a defect in the grand jury process, and called into question the validity of the indictments themselves. Trial counsel failed to move to quash the indictments. There was no strategic reason for failing to move to quash.

## **Discussion**

A.    Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the

state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999).  Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399.  A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply.  "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted).  "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those race instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner]." Harris, 209 F.3d at 330.  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing the doctrine does not apply. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2)

6

beyond his control or external to his own conduct, (3) that prevented him from filing on time. Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004). It is clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Likewise, an attorney's mistake in calculating the filing date of the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

Byrd's conviction became final on October 6, 2000. The South Carolina Court of Appeals affirmed his conviction on September 20, 2000. He did not seek review by the South Carolina Supreme Court within the time prescribed under state procedure, and the Remittitur was returned on October 6, 2000. Thus, Byrd had until October 6, 2001 to file his petition in this court. Byrd I was filed on November 1, 2000, and the statute of limitations was tolled until its final resolution when the Remittitur was returned by the South Carolina Supreme Court on May 13, 2003. At that time, twenty-three days of untolled time had passed, and Byrd had another three hundred and forty two (342) days, i.e., until April 20, 2004 to file his petition. It was not filed until August 14, 2007.[2]

Respondents implicitly concede that if Byrd II (filed September 17, 2003; resolved July 19, 2007) tolled the statute of limitations, the present petition would be timely. However, that application was rejected in part because it was successive and violated the state's statute of limitations. Therefore, the undersigned concludes that Byrd II was not "properly filed" under 28 U.S.C. § 2244, and it did not toll the statute of limitations. The present petition is untimely.

Byrd argues that Byrd II tolled the statute of limitations because the PCR court addressed his claim that the defective indictments deprived the trial court of subject matter jurisdiction. This court has previously rejected Byrd's argument. See Griffin v. Padula, 518 F. Supp. 2d 671, 677

---

[2] This is the date Byrd delivered his petition to the institutional mail room to be sent for filing. (Petition, p. 15).

7

(D.S.C. 2007) (AEDPA provides no statute of limitations exception for consideration of claims of lack of subject matter jurisdiction based on state law).

B.  Merits

Respondents assert that Byrd would not be entitled to relief even if the claims in his present petition are considered on their merits.

Since Byrd filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from

8

> this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

       1.    In-Court Identification

Byrd asserts that the procedure used by the state prior to trial was impermissibly suggestive and therefore, the court violated his right to due process by allowing the CI to identify him at trial.  Trial counsel moved to suppress the identification by the CI, and an in camera hearing was held. (App. 31-50).  The trial court applied Neil v. Biggers, 409 U.S. 188 (1972) (even though pretrial procedure suggestive, an in-court identification reliable under the totality of the circumstances is admissible), denied Byrd's motion, and allowed the CI to identify Byrd.  Byrd raised the issue on appeal, but the South Carolina Supreme Court applied a procedural bar holding the issue was not properly preserved for review.  Since the state courts applied a procedural bar to this issue, this court should honor that bar absent a showing of cause and prejudice by the petitioner. Smith v. Murray, 477 U.S. 527 (1986) and Engle v. Isaac, 456 U.S. 107 (1982).  Byrd has made no argument in this regard.

       2.    Jury Selection

Byrd asserts that the trial court violated his right to equal protection by improperly allowing the State to strike a juror in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  Byrd is African-American and the Solicitor used a preemptory  challenge to exclude an

9

African-American juror. This issue was raised on direct appeal and respondents concede it is properly exhausted.

In Batson v. Kentucky, supra, the Supreme Court held that the prosecution in a criminal case could not use its peremptory challenges in a racially discriminatory manner as such conduct violates the equal protection clause. The court also spelled out certain factors a defendant might use to demonstrate a prima facie case of discriminatory exercise of peremptory challenges. The Fourth Circuit has held that a party's successive use of peremptory challenges to exclude blacks may establish a pattern of discrimination to be used in a Batson analysis. See U.S. v. Tindle, 860 F.2d 125 (4th Cir. 1988) and U.S. v. Allen, 666 F. Supp 847 (E.D.Va. 1987), aff'd sub nom. U.S. v. Harrell, 847 F.2d 138 (4th Cir. 1988), where prosecutors used five of six peremptory challenges to exclude blacks. However, in considering the reasons given by a prosecutor for using strikes against potential black jurors, a number of factors have been ruled acceptable race-neutral reasons for exclusion including: a juror's educational status, U.S. v. Harrell, 847 F.2d 138 (4th Cir. 1988) and U.S. v. Lane, 866 F.2d 103 (4th Cir. 1989); a person's age, U.S. v. Hamilton, 850 F.2d 1038 (4th Cir. 1988) and U.S. v. Joe, 928 F.2d 99 (4th Cir. 1991); and a juror's employment status, U.S. v. Harrell, supra; U. S. v. Allen, supra; and U.S. v. Ferguson, 935 F.2d 862 (7th Cir. 1991).

In Lane, supra, a criminal case, the Fourth Circuit stated:

> In the selection of a jury panel, prosecutors and defense counsel use their peremptory challenges depending on many valid factors. For example, although one may be searching for jurors who have a certain characteristic such as a college degree, a juror who did not complete college may nevertheless be accepted because he possesses other desirable characteristics. Numerous factors may influence the decision. . ., including current and past employment, general appearance and demeanor, previous juror service, and the absence or presence of apparent prejudice.

10

The Court went on to say that Batson states that parties may exercise their strikes in a non-racially discriminatory manner "as long as that reason is related to [their] view concerning the outcome of the case to be tried." Lane, supra at 106.

Once the party alleged to have acted in a racially discriminatory manner provides facially neutral reasons for the use of his peremptory challenges, the burden shifts to the other party to show that the reasons provided are pretextual. U.S. v. Joe, supra. At petitioner's trial, the prosecution provided race-neutral reasons to support its strikes of potential jurors. At that point, the burden shifted to petitioner to show that the reasons given were pretextual. After the jury had been selected, defense counsel made a Batson motion concerning three potential jurors. The present petition relates to one of those, an African-American. The Solicitor argued that "during voir dire of the jury panel it came to my attention that that particular juror–she has a son who has been arrested many times...for...distribution of drug charges."(App. 17). Defense counsel argued that this juror did not state during voir dire that her son had been arrested. The Court agreed but noted that the Solicitor had only stated that he had received the information during voir dire, not that it had come from the juror. Defense counsel made no further effort to show that the reason given was pretextual. (App. 21-22).

Byrd continued the argument on direct appeal, arguing pretext because the information had not come from the potential juror. The argument was rejected by the South Carolina Supreme Court. Since Byrd provided no evidence of pretext, the undersigned concludes that the South Carolina courts properly applied Batson.

        3.     Ineffective Assistance of Trial Counsel

Byrd asserts that his trial counsel was ineffective for failing to request a jury instruction on the lesser included offense of simple possession of crack cocaine[3] (Ground 3) and for not moving to quash the indictment due to an alleged defect (Ground 4).[4]

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

---

[3] Byrd raised the simply possession issue as a claim of trial court error in Byrd I, but it was addressed by the PCR court as a claim of ineffective assistance of counsel. (App. 310). He raised the ineffective assistance of counsel issue in the Johnson petition following denial of his application. (Res. Mem., Ex. 3).

[4] Byrd asserted that the indictment was defective in Byrd II. The PCR court found that the indictment was not defective. Again, Byrd raised the ineffective assistance of counsel issue in the Johnson petition in Byrd II. (Res. Mem., Ex. 11).

12

\* \* \*

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. See <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

        a.        Simple Possession

Under South Carolina law "(t)he trial court is required to charge a jury on a lesser-included offense if there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed. However, the trial should refuse to charge on a lesser-included offense where there is no evidence that the defendant committed the lesser rather than the greater offense." <u>Suber v. State</u>, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (S.C. 2007) (internal quotation marks and citations omitted).

The PCR court in <u>Byrd I</u> ruled:

> South Carolina Code Ann. § 44-53-375 specifically provides that the transfer of a controlled substance is sufficient [and] does not contemplate weight as an element of distribution. Therefore, no reason existed for trial counsel to object to the trial court's charge. Tr. p. 218. Accordingly the allegation of ineffective assistance of counsel is denied. (App. 310).

In other words, the PCR court held that trial counsel committed no error in not objecting to the trial court's jury instruction, or requesting an instruction on simple possession. Byrd was indicted for distribution of crack cocaine, not possession with intent to distribute. The evidence showed a distribution by Byrd to the CI. The state courts properly applied the <u>Strickland</u> test to this claim.

### b.     Defective Indictment

Byrd asserts that the trial court was deprived of subject matter jurisdiction because of a defect in the indictment. The alleged defect relates to dates shown on the face of the indictment. The indictment shows that the Grand Jury found "True Bills" on July 30, 1998, but that the term of court for presentment of the indictment was August of that year. (App. 314-319). The PCR court in <u>Byrd II</u> found:

> (T)here is no defect in the indictment. Based on the indictment itself and the testimony presented at the hearing, the Court finds the Grand Jury met on Thursday, July 30, 1998 and the jury foreman signed the indictment that day. The indictment was then presented to the Circuit court at the ensuing August term of General Sessions Court. There has been no showing that this procedure is irregular.

(Res. Mem., Ex. 10).

The South Carolina courts found there was no defect in the indictment and no irregularity in the state procedure. Thus, trial counsel committed no error in failing to move to quash the indictment.

### Conclusion

Based on a review of the record, it is recommended that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

June 30, 2008                              s/Joseph R. McCrorey
Columbia, South Carolina             United States Magistrate Judge
**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).